IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MIDDENDORF SPORTS, a Maryland Sole Proprietorship, | ) ) ) | CASE NO. 8:17-cv-00011 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **AMENDED COMPLAINT and DEMAND FOR JURY TRIAL** |
| TOP RANK, INC., a Nevada corporation, and TERENCE CRAWFORD, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

The Plaintiff, Middendorf Sports ("Middendorf Sports"), by and through its undersigned attorneys, for its causes of action against the Defendants, Top Rank, Inc. ("Top Rank" or "TR"), and Terence Crawford ("Crawford" or "Fighter"), states and alleges as follows:

## <u>PARTIES</u>

1.      The Plaintiff, Middendorf Sports, is and was at all times relevant herein a Maryland Sole Proprietorship with its primary place of business located in Kensington, Maryland.

2.      The Defendant, Top Rank, is and was at all times relevant herein a Nevada corporation with its primary place of business located in Las Vegas, Nevada.

3.     The Defendant, Terence Crawford, is and was at all times relevant herein a resident of Omaha, Douglas County, Nebraska.[1]

## FACTUAL ALLEGATIONS

4.     On December 7, 2010, TKO Boxing Promotions, LLC ("TKO")[2] and Crawford entered into a Promotional Rights Agreement ("TKO Promotional Rights Agreement") where TKO was to promote and stage bouts involving Crawford and to further Crawford's boxing career.

5.     In the summer of 2011, TKO arranged for and negotiated with Top Rank to take over as promoter for Crawford.

6.     On June 16, 2011, with TKO's blessing and approval, Top Rank and Crawford entered into a Promotional Rights Agreement ("Top Rank Promotional Rights Agreement") regarding certain promotional services and commitments as well as the promotion of a number of bouts for Crawford.

7.     On June 30, 2011, TKO and Top Rank entered into an Agreement and Release (which was drafted by Top Rank's in-house counsel), which provided, in part, as follows:

> **Top Rank Promotional Rights Agreement.**  TKO hereby consents and agrees that TR may enter into a promotional rights agreement ("Promotional Rights Agreement"), bout agreement, and other boxing-related agreements and understandings with Fighter and

[1] Crawford is named as a nominal Defendant as Middendorf Sports does not allege any wrongdoing by Crawford.

[2] TKO was a Nevada Limited Lability Company and related to Middendorf Sports.

his manager on terms acceptable to TR in its discretion and that TKO shall have no ownership or participation rights in such agreements or the proceeds therefrom.

**Fee.**  For each Title Defense (for either the WBC, WBO, WBA, or IBF, and as defined in the Promotional Rights Agreement) of Fighter's [sic] promoted by Top Rank pursuant to the Promotional Rights Agreement, TKO shall be paid a fee equal to eight percent (8%) of the purse payable to Fighter for such Title Defense, which amount shall be paid to TKO within five (5) business days of each bout.

A true and accurate copy of the Agreement and Release dated June 30, 2011, is attached hereto and marked *Exhibit A*.

8.      The Top Rank Promotional Rights Agreement with Crawford provided, among other things, for promotional rights to Minimum Bouts and Purses, Championship Challenge Bout (sic), Championship Title Defense Bouts and Other Bouts.

9.      On July 19, 2011, TKO executed a Notice of Agreed Assignment of Rights ("Assignment") to Middendorf Sports which assigned its rights under the Agreement and Release dated June 30, 2011. This Assignment was drafted for the benefit of TKO and Middendorf Sports by Top Rank's in-house counsel.  A true and accurate copy of the Notice of Agreed Assignment of Rights dated July 19, 2011, is attached hereto and marked *Exhibit B*.

10.    On or about September 16, 2014, Top Rank and Crawford entered into an Exclusive Restated Promotional Rights Agreement ("Top Rank Exclusive Restated Promotional Rights Agreement") as Crawford wished to continue his existing promotional relationship with Top Rank in order to further his career as a professional boxer and Top Rank was willing and able to provide the promotion of a number of bouts for Crawford.

11.    The Top Rank Exclusive Restated Promotional Rights Agreement replaced the Top Rank Promotional Rights Agreement.  A true and accurate copy of the Exclusive Restated Promotional Rights Agreement dated September 16, 2014, is attached hereto and marked *Exhibit C*.

12.    The Top Rank Exclusive Restated Promotional Rights Agreement granted Top Rank the exclusive rights to promote all of Crawford's fights for a minimum of three (3) years with options to extend the Top Rank Exclusive Restated Promotional Rights Agreement for an additional three (3) years.

13.    Prior to July 23, 2016, Top Rank paid Middendorf Sports without fail pursuant to the Agreement and Release dated June 30, 2011, after each one of Crawford's four title defense fights which were against Yuriorkis Gamboa on June 28, 2014, Raymundo Beltran on November 29, 2014, Dierry Jean on October 24, 2015 and Henry Lundy on February 27, 2016.

14.    On July 23, 2016, Crawford, as the WBO champion, fought Viktor Postal, who was the WBC champion.  Not only was Crawford defending his own WBO title, but he was also seeking to take the WBC title from Viktor Postol.

15.     The purse for the July 23, 2016, fight between Crawford and Viktor Postal was $1,300,000.00.  Crawford successfully defended his WBO title.

16.     Without legal justification, Top Rank has failed and refused to pay Middendorf Sports the Title Defense Fee set forth in the Agreement and Release dated June 30, 2011, related to Crawford's July 23, 2016 title defense fight between Crawford and Viktor Postal as it has done in the past without fail.

17.     On December 10, 2016, Crawford, as the WBO and WBC champion, fought John Molina.

18.     The purse for the December 10, 2016, fight between Crawford and John Molina was $1,500,000.00 plus a percentage of the gate receipts.  Crawford successfully defended both of his WBO and WBC titles.

19.     Without legal justification, Top Rank has failed and refused to pay Middendorf Sports the Title Defense Fee set forth in the Agreement and Release dated June 30, 2011, related to Crawford's December 10, 2016 title defense fight between Crawford and John Molina as it has done in the past without fail.

20.     On May 20, 2017, Crawford, as the WBO and WBC champion, fought Felix Diaz.

21.     The purse for the May 20, 2017, fight between Crawford and Felix Diaz was $1,600,000.00 plus $35,000.00 in training expenses and, upon information and belief, a percentage of the gate receipts.  Crawford successfully defended both of his WBO and WBC titles.

22.    Without legal justification, Top Rank has failed and refused to pay Middendorf Sports the Title Defense Fee set forth in the Agreement and Release dated June 30, 2011, related to Crawford's May 20, 2017 title defense fight between Crawford and Felix Diaz as it has done in the past without fail.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

23.    Middendorf Sports incorporates by reference the allegations set forth and contained within paragraphs one through 22 of its Amended Complaint as if fully set forth herein.

24.    The Agreement and Release dated June 30, 2011, as later assigned, constitutes a valid and enforceable contract between Top Rank and Middendorf Sports.

25.    TKO and/or Middendorf Sports have fully and faithfully performed any and all of their obligations and duties under the Agreement and Release dated June 30, 2011, except for those obligations and duties that were excused and/or rendered impossible.

26.    Top Rank breached the Agreement and Release by failing and refusing to perform its obligations and duties set forth in the Agreement and Release.

27.    Middendorf Sports has sustained and incurred monetary damages in excess of $75,000.00.

## SECOND CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

28.     Middendorf Sports incorporates by reference the allegations set forth and contained within paragraphs one through 27 of its Amended Complaint as if fully set forth herein.

29.     Middendorf Sports and Top Rank were parties to a valid and enforceable Agreement and Release.

30.     Top Rank owes Middendorf Sports a duty of good faith and fair dealing arising out of the Agreement and Release.

31.     Top Rank breached its duty of good faith and fair dealing by its unjustified failure and refusal to perform its obligations and duties under the Agreement and Release.

32.     As a result of Top Rank's actions, Middendorf Sports' justified expectations contained within the Agreement and Release were denied.

33.     As a result of Top Rank's breach of the implied covenant of good faith and fair dealing, Middendorf Sports has sustained and incurred monetary damages in excess of $75,000.00.

## THIRD CAUSE OF ACTION
## ACCOUNTING

34.     Middendorf Sports incorporates by reference the allegations set forth and contained within paragraphs one through 33 of its Amended Complaint as if fully set forth herein.

35.    Top Rank has failed and refused to perform its obligations and duties under the Agreement and Release.

36.    Middendorf Sports is entitled to be paid a fee equal to eight percent (8%) of the purse payable to Fighter for every such Title Defense.

37.    Middendorf Sports is entitled to a full accounting by Top Rank consisting of any and all amounts payable under the Top Rank Promotional Rights Agreement and the Top Rank Exclusive Restated Promotional Rights Agreement after June 30, 2011.

## FOURTH CAUSE OF ACTION
## DECLARATORY JUDGMENT

38.    Middendorf Sports incorporates by reference the allegations set forth and contained within paragraphs one through 37 of its Amended Complaint as if fully set forth herein.

39.    A justiciable controversy exists between Middendorf Sports, Top Rank and Crawford regarding each party's rights and obligations under the Agreement and Release and the Top Rank Exclusive Restated Promotional Rights Agreement.

40.    Middendorf Sports has a legally recognized and protectable interest in prosecuting this claim and its interests are adverse to Top Rank's interests.  Crawford's interests are also affected.

41.    The issues involved in this action are ripe for judicial determination because this Court has the power to declare the construction or validity of the contracts either before or after breach.

42.    Middendorf Sports requests declaratory judgments regarding the scope and duration scope of the Agreement and Release as well as the amounts owed under the Top Rank Exclusive Restated Promotional Rights Agreement.

## PRAYER FOR RELIEF

**WHEREFORE,** Middendorf Sports prays that this Court enter a Judgment in its favor against Top Rank consisting of the following:

a.  An award of compensatory damages in excess of $75,000.00 as shown at the time of trial;

b.  A full and complete accounting of all monies Top Rank has paid to Crawford, including, but not limited to, all proceeds from the live gate receipts and all proceeds from the pay per view revenues;

c.  A declaration regarding the duration and scope of the Agreement and Release and the amounts owed under the Top Rank Exclusive Restated Promotional Rights Agreement;

d.  For an award of its attorneys' fees, costs, expenses and interest as provided by law; and

e.  For such other and further relief as this Court deems just and equitable.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Pursuant to NE.Civ.R. 38.1, Plaintiff demands and jury trial on any and all issues so triable.

Dated this 1st day of June, 2017.

9

MIDDENDORF SPORTS, Plaintiff,


By: _/s/ D. C. Bradford III_____
       D.C. "Woody" Bradford III, #10402
       Keith A. Harvat, #21008
       HOUGHTON BRADFORD WHITTED PC, LLO
       6457 Frances Street, Suite 100
       Omaha, NE  68106
       Telephone:  (402) 344-4000
       Facsimile:  (402) 930-1099
       wbradford@houghtonbradford.com
       kharvat@houghtonbradford.com

       and

       Michael Miller (*pro hac vice* pending)
       Law Offices of Michael Miller, P.C.
       926 Chulie Drive
       San Antonio, TX 78216
       Telephone:  (210) 225-6666
       Facsimile:  (210) 225-2300
       mmiller@michaelmillerlaw.com
       *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1st, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


       _/s/ D. C. Bradford III_____
       D. C. Bradford III #10402


419503

10

## AGREEMENT AND RELEASE

### June 30, 2011

This Agreement and Release ("Release") is entered into between TKO Boxing Promotions, LLC ("TKO") and Top Rank, Inc. ("TR") for the release of Terence Crawford. TKO and TR are collectively referred to herein as the "Parties and individually as a "Party".

TKO entered into a Promotional Rights Agreement dated as of December 7, 2010 (the "TKO Promotional Agreement") with Terence Crawford ("Fighter") where under TKO was to promote and stage the bouts involving Fighter and further Fighter's boxing career. For the consideration as provided herein, TKO wishes to release each other from any and all obligations and terminate the TKO Promotional Agreement.

1. TKO Boxing Promotions, LLC ("TKO") represents and warrants to Top Rank, Inc. ("TR") that to the best of TKO's knowledge, Fighter is not currently subject to any boxing, athletic commission or sanctioning body suspension, prohibition or other regulatory restriction.

2. Payment. In consideration for the execution of the release attached hereto, TR shall pay the amount of Seven Thousand, Five Hundred Dollars ($7,500.00) to TKO within five (5) business days of TKO's execution of this Agreement.

3. Release. TKO hereby cancels and terminates its TKO Promotional Agreement, dated as of December 7, 2010, with Fighter. Upon Fighter's execution and delivery of the Termination and Mutual Release in the form annexed hereto, TKO waives and releases for all time any and all claims, accounts receivable, rights , and causes of action which it now has or may have against Fighter, Fighter's manager or representatives, their heirs and assigns, including, without limitation of the foregoing, any matters with respect to the TKO Promotional Agreement and Fighter's obligations and liabilities thereunder or otherwise.

4. Top Rank Promotional Rights Agreement. TKO hereby consents and agrees that TR may enter into a promotional rights agreement ("Promotional Rights Agreement"), bout agreements, and other boxing-related agreements and understandings with Fighter and his manager, on terms acceptable to TR in its discretion and that TKO shall have no ownership or participation rights in such agreements or the proceeds therefrom.

5. Fee. For each Title Defense (for either the WBC, WBO, WBA, or IBF, and as defined in the Promotional Rights Agreement) of Fighter's promoted by Top Rank pursuant to the Promotional Rights Agreement, TKO shall be paid a fee equal to eight percent (8%) of the purse payable to Fighter for such Title

EXHIBIT A

Defense, which amount shall be paid to TKO within five (5) business days of each bout.

6. <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. This Agreement may be executed by signatures provided by electronic facsimile transmission (also known as "Fax" copies), which facsimile signatures shall be as binding and effective as original signatures.

7. <u>Governing Law.</u> The validity, constructions, performance, and enforceability of this Agreement shall be governed in all respects by Nevada law without respect to conflict of law principals.

IN WITNESS HEREOF, the Parties have caused this Agreement and Release to be duly executed as of the date first above written by their respective officers duly authorized.

TKO Boxing Promotions, LLC          Top Rank, Inc., a Nevada corporation

By

## NOTICE OF AGREED ASSIGNMENT OF RIGHTS

This Assignment of Rights is hereby between TKO Boxing Promotions, LLC., ("TKO"), and Top Rank, Inc. ("Top Rank"). This Assignment is set forth pursuant to the contractual provisions of the existing Agreement ("Agreement") dated June 30, 2011 between Top Rank and TKO.

Promoter, TKO, shall assign, license and transfer any and all rights granted to it as set forth in the Agreement. These rights shall be assigned, licensed and transferred to MIDDENDORF SPORTS ("Assignor") 4111 Saul Road, Kensington, MD 20895.

This Assignment of Rights is agreed to by TKO and the Assignor and is further ratified and agreed to by any agents, representatives, managers or employees of the aforementioned parties.

This Assignment of Promotional is effective immediately.

In conjunction hereto, TKO hereby agrees to indemnify and hold harmless Top Rank, from any and all claims, suits, actions, proceedings, expenses (including reasonable attorney's fees) and damages arising from any actual or claimed representations or covenants that directly relate to this Agreed Assignment.

TKO BOXING PROMOTIONS, LLC.

Date: July 19, 2011

EXHIBIT B

## EXCLUSIVE RESTATED PROMOTIONAL RIGHTS AGREEMENT

This Agreement dated as of September 16, 2014 between TOP RANK, INC., a Nevada corporation with offices at 748 Pilot Road, Las Vegas, Nevada 89119 (herein "**Top Rank**" or "**Promoter**") and Terence Crawford who resides in Omaha, Nebraska (hereinafter called "**Fighter**").

WHEREAS, Top Rank and Fighter entered into that certain Exclusive Promotional Rights dated as of June 16th, 2011, and Fighter wishes to continue his existing promotional relationship with Top Rank in order to further Fighter's career as a professional boxer, and Top Rank is willing and able to provide the promotion of a number of bouts for Fighter upon the terms set forth herein. Top Rank and Fighter hereby agree enter into this Exclusive Restated Promotional Rights Agreement, which agreement will supersede and replace the prior Promotional Agreement upon the terms and conditions set for below:

NOW, THEREFORE, in consideration for the mutual promises set forth herein, the parties agree as follows:

1.    Grant of Promotion Rights.

Fighter hereby grants to Promoter the exclusive right to promote those professional boxing contests to be engaged in by Fighter and to be promoted by Promoter as provided in this Agreement, during the term of this Agreement and any extension thereof. Promoter shall promote such bouts subject to the terms and conditions set forth herein, and the terms of this Agreement shall apply to championship title bouts as well as non-title bouts. Such promotional rights shall include all exclusive rights required to stage and sell tickets of admission to such boxing contests as well as the right to exploit and market all ancillary rights

EXHIBIT C

thereto, including, without limitation of the foregoing, all exclusive worldwide rights to broadcast, telecast, exhibit, transmit, record and film such bouts for exhibition on a live or delayed basis in any and all media (whether now existing or hereafter devised) throughout the universe in perpetuity, including, without limitation of the foregoing, all worldwide television rights, including, without limitation of the foregoing, the unlimited and unrestricted right to telecast the bouts referred to herein by means of live or delayed free over-the-air, cable, subscription, master antenna, multi-point or closed circuit television; pay-per-view television by means of terrestrial, cable, over-the-air, satellite, analog and digital transmission as well as Video On Demand, Near Video On Demand and HDTV, PDAs and other multimedia services; radio; films and tapes, for exhibition in all media and in all gauges, whether for theatrical exhibition or for sale, lease or license for home use, including audio and audio-visual cassettes and discs, CD-ROM, digital video devices ("**DVD**"), all forms of internet on-line services or delivery, games and toys, and the unlimited right to deal with any or all of the foregoing, and to obtain copyright or similar protection in the United States and all other countries of the world where such protection is available in the name of Promoter or Promoter's nominees or assignees and all other rights, privileges, benefits, matters and things incident to or arising out of all or any of the foregoing, all in such manner as Promoter in its sole discretion shall determine. Further, Fighter grants to Promoter all commercial and non-commercial advertising uses of the bouts and portions thereof and Fighter's name and image, with respect to which Fighter hereby waives his personal right of privacy. Fighter grants to Promoter the right to use in any medium the name, likeness and biographical material of Fighter, and his trainers and seconds, for the purpose of advertising and promoting the bouts and for advertising and promoting the Ancillary Rights, as defined herein, including souvenir programs sold in connection with the bouts or the sale of said

2

programs at any time thereafter and including institutional advertising by the site and Promoter's television licensees for the bouts. Promoter and its licensees or assignees shall have the right to use the name of Fighter, his photograph or other likeness, on commercial and merchandising tie-ups and advertisements, banners, buttons, posters, T-shirts, clothing (such as hats and jackets), jewelry and other souvenir items, and all similar products, but only in connection with and expressly related to the bouts and the Ancillary Rights. All of the rights, privileges and benefits granted by Fighter to Promoter pursuant to this paragraph 3 are hereinafter referred to as the "**Ancillary Rights**."

2.     Term.

(a)     The term of this Agreement shall commence on the date of the first bout pursuant to this Agreement and shall continue for a period of three (3) years following such bout, unless terminated sooner or extended further pursuant to a specific provision of this Agreement (the "**Term**").

(b)     Subject to the provisions of Section 3 of this Agreement, and in addition to Promoter's right to terminate this Agreement pursuant to Section 2(c) of this Agreement, in the event that Fighter shall fail, for any reason whatsoever (other than a disability or postponement as provided in Section 10 of this Agreement) to engage in the minimum number of bouts as offered by Promoter during the Term, or to engage in any bout with an opponent approved by Fighter, Promoter shall have the right to terminate this Agreement without further liability or obligation to Fighter, except for the payment to Fighter of purses for bouts which have been completed during the period prior to such termination pursuant to this Agreement.

3

(c)      In the event that at any time during the Term Fighter shall fail to have been declared the winner of any professional boxing match, for any reason, by the official boxing or athletic commission with jurisdiction over such bout, then Promoter shall have the right, but not the obligation, to terminate this Agreement upon notice to Fighter, without any further obligation to Fighter, except for the payment of any purse which may be due for a previously completed Bout.

3.      Minimum Bouts and Purses.

(a)      During each year of this Agreement Promoter shall offer to Fighter the right to participate in a minimum of two (2) Bouts featured as the main event on premium cable (HBO) *C.D.* ~~or~~ or as the main event on a pay-per-view event.  The purses to be paid to Fighter for each bout featured as a main event on premium cable/PPV main event will be as follows:

~~The fighter will be paid $25,000 or within five buisness days~~

(i)      For Fighter's 1st such bout pursuant to this Agreement (scheduled for November 29th, 2014) Eight Hundred Thousand ($800,000.00) Dollars plus $25,000 in training expenses;

(ii)      For Fighter's 2nd such bout, Eight Hundred and Fifty Thousand ($850,000.00) Dollars plus $25,000 in training expenses;

(iii)      For Fighter's 3rd such bout, Nine Hundred Thousand ($900,000.00) Dollars plus $25,000 in training expenses; and

(iv)      For Fighter's subsequent such bouts, a minimum of One Million ($1,000,000.00) Dollars.

Fighter and Promoter may mutually agree to provide Fighter an opportunity to participate in a third bout during a 12 month period, with the purse for the bout to be negotiated reasonably and in good faith, taking into account the opponent, the event budget and other similar factors.

(b)      Gate Participation.  As additional compensation for Fighter's participation in bouts featured as main events occurring in Omaha, Nebraska pursuant to this Agreement, Promoter agrees to make the additional payments to Fighter:

4

(i)    If the Net Gate Revenues should exceed $500,000, then Promoter will pay to Fighter an additional $~~35,000~~ ~~$0,000~~  $35,000

(ii)   If the Net Gate Revenues should exceed $600,000, then Promoter will pay to Fighter an additional $~~40,000~~ and ~~60,000~~  $50,000

(iii)  If the Net Gate Revenues should exceed $700,000, then Promoter will pay to Fighter an additional $~~60,000~~ ~~$0,000~~  $70,000

The term Net Gate Revenues shall mean all gross revenues paid to and received by Promoter from the sale of tickets of admission to the live event at the site (excluding any complimentary tickets) after deducting applicable taxes (including without limitation any state or city ticket tax on the event) and charges (including any per ticket facility surcharges) and those costs and expenses related to such live event directly attributable to the live event or as actually deducted or charged by the site pursuant to Promoter's agreement with the Site for such event, including, without limitation of the foregoing, all box office expenses, Ticketmaster fees and credit card charges and chargebacks; arena rental, staffing, tickets sales commissions actually paid, equipment rentals and building costs, ring talent, ring announcers and arena music licenses; security; set-up and take-down; and insurance, all of which revenues as paid and expenses as charged and deducted by the Site shall be reported by TR to Fighter. Within sixty (60) days after the Event, TR shall deliver to Fighter a complete and detailed report of all Net Gate Revenues (along with any Ticketmaster or equivalent report for the Event) and the costs and expenses included in the computation of Net Gate Revenues, accompanied by the fee pursuant to this section, if any, which shall be payable to Fighter.

(c)    If Fighter should fail to be declared the winner of any bout by the applicable state athletic commission with jurisdiction over such bout, then (notwithstanding the provisions of Section 3(a)) Fighter's minimum pursue for any bout pursuant to this Agreement, regardless of weight class or applicable title or sanctioning body, shall be negotiated in good faith, but shall be the minimum of $200,000 for a main event on HBO/~~Showtime~~, $100,000 for a semi-main event on HBO/~~Showtime~~ and $25,000 for any other bout.  Provided that Promoter elects not to exercise its option under Section 2(c) of this Agreement, during each year of this Agreement Promoter will offer to Fighter the right to participate in a minimum of two (2) bouts, and the venue or television broadcaster of each such bout shall be subject to the discretion of Promoter.

4.    Dates, Sites, Opponents, Transportation and Accommodations.

5

(a)    Promoter shall select, in its discretion, the date and site for each Bout hereunder, upon notice to Fighter.

(b)    The opponent for each Bout hereunder shall be selected by Promoter, subject to the reasonable right of approval of Fighter and his manager and subject to the approval of the applicable commission or championship sanctioning body.

(c)    For each Bout hereunder, Promoter shall provide round-trip air transportation, *6 ~~rooms~~ & ~~6~~ suites, Meals for 10* rooms and meals (the "**Accommodations**") for six (~~6~~) persons including Fighter for the period of time prior to and through the date of each Bout as Promoter shall designate in its sole discretion.

*C.D.    (d) WITHIN FIVE (5) BUSINESS DAYS OF THE EXECUTION OF THIS AGREEMENT, PROMOTER WILL PAY AT FIGHTER'S DIRECTION, FIVE THOUSAND ($5,000.00)*

5.    Other Bouts *DOLLARS TO FIGHTER'S Co-MANAGER BRIAN McINTYRE.*
*Also Brian McIntyre will receive $15,000 for helping with promoting the Show in ~~ONE~~ NEBRASKA —*

(a)    Other than the Bouts provided for in this Agreement, Fighter shall not engage in or contract with any promoter or other party for Fighter to engage in any boxing matches, athletic contests or exhibitions during the Term of this Agreement or any extension thereof; and Fighter shall not, during the term of this Agreement and any extension, grant exclusive promotional rights, to substantially the same extent as granted herein to Promoter with respect to each Bout described herein, to any person or entity other than Promoter; and Fighter shall not enter into any agreement which would conflict in any material way with the ability of Promoter to promote the Bouts provided for in this Agreement.

(b)    Notwithstanding anything to the contrary contained herein, if any Bout (Title Challenge or Title Defense) hereunder is subject to a purse bid ("**Purse Bid Bout**"), Promoter shall submit a good faith bid for such bout, provided that Fighter agrees that the amount of such bid shall be determined in Promoter's sole discretion and shall not be tied to Promoter's minimum purse obligations hereunder. If Promoter should submit a bid but does not win, then:

6

(i) Promoter's rights hereunder shall continue in full force and shall not be affected in any way; and (ii) Promoter shall be entitled to receive, and Fighter shall direct the applicable promoter of the Purse Bid Bout to pay directly to Promoter, an amount equal to 20% of Boxer's gross purse for such purse bid bout, which payment shall be delivered to Promoter within three business days after the applicable bout.

6.    Fighter's Approval of Opponents

With respect to those bouts hereunder for which Fighter shall have a right of approval over an opponent selected by Promoter, Fighter or his representative shall notify Promoter of Fighter's approval or disapproval of each proposed opponent not later than five (5) business days after notification by Promoter to Fighter of the proposed opponent. The failure of Fighter to provide timely notice of disapproval shall constitute an approval of the proposed opponent.

7.    Intent in Signing

Fighter acknowledges and agrees that his signing of this Agreement is solely for the purpose of obtaining certain promotional services and commitments of Promoter upon the terms and conditions of this Agreement and that Fighter has not been required to sign this Agreement or to grant any of the rights herein granted to Promoter as a condition precedent to Fighter's participation in any professional boxing match against another fighter who is under contract to Promoter, or otherwise.

8.    Form of Bout Agreement

For each bout hereunder, Fighter and Promoter shall execute and comply with the terms of Promoter's then customary form of Bout Agreement or the standard boxing contract required by the athletic or boxing commission with jurisdiction over each bout.

7

9.     Promoter's Option to Extend

(a)     It is understood and agreed by Fighter, that Promoter shall have the right, in Promoter's sole discretion, to extend the term of this Agreement by a period of an additional Twenty-Four months (the "Initial Option") on the same terms and conditions under this Agreement at any time during the final 12 months of the Term of this Agreement.

(b)     It is further understood that Promoter shall also have the right, in Promoter's sole discretion, to extend the term of this Agreement by a period of an additional Twelve months (in addition to the extension provided above) on the same terms and conditions under this Agreement at any time during the final 12 months of the Term (as extended under 9(a) of this Section) of this Agreement.

10.    Disability or Postponement

(a)     Should any bout scheduled to be promoted hereunder be postponed for any reason, the obligations of Fighter and Promoter relating to the bouts set forth in Sections 3, 5 and 6 of this Agreement, and the Term of this Agreement, shall automatically be extended for the period of any such postponement.

(b)     In addition, subject to subparagraph (c) of this Section 12, if at any time during the Term, or any extension thereof, Fighter becomes injured, suspended or permanently or partially disabled, or Fighter should otherwise be unavailable to participate in Bouts hereunder for any reason, the Term, including the obligations of Fighter and Promoter relating to the bouts set forth in Sections 3, 5 and 6 of this Agreement, shall automatically be extended for the period of such injury, suspension, disability or unavailability.    At Promoter's sole election, this

8

Agreement may be suspended during the period of Fighter's temporary retirement, if any, but shall become fully operative if and when Fighter resumes his professional boxing career.

(c)    Further, Promoter, at its sole discretion, shall have the right, but not the obligation, upon any such injury, suspension, disability or unavailability declared by Fighter or an athletic commission or otherwise, to terminate this Agreement upon notice to Fighter without any further liability or obligation to Fighter.

11.    Disqualification.

During the Term and any extension thereof, Fighter shall be ready, willing and able to participate in each bout to be promoted by Promoter hereunder, to the best of Fighter's ability, and shall honestly compete and give an honest exhibition of skills. Without limiting any of Promoter's rights or remedies at law or in equity, Promoter shall have the right to terminate this Agreement in its entirety if Promoter believes, in its good faith judgment, that Fighter is not ready, willing and able or willing to participate to the best of his ability. In addition, if at any time during the Term Fighter should commit any act or be charged with any crime or misdemeanor which would permit any arena, event site or television broadcaster, distributor or exhibitor to cancel its contract with Promoter for a particular bout or boxing program to be promoted by Promoter in which Fighter was to participate, Promoter shall have the right and option, in its discretion, to terminate this Agreement upon notice to Fighter, without any further obligation or liability to Fighter except for the payment of any agreed purse amount which may then be due for a previously completed bout.

12.    Fighter's Representations and Warranties.

Fighter represents, warrants and agrees:

9

(i)    that Fighter is free to enter into this Agreement, and is not a party to, and will not during the Term enter into any contract or agreement to participate as a contestant in a boxing contest which would interfere with Fighter's ability to fulfill his obligations under this Agreement;

(ii)    that there are no pending claims (asserted or unasserted) affecting the Fighter which would or might interfere with the full and complete exercise or enjoyment by Promoter of any rights granted hereunder; and

(iii)    that Fighter has executed no contract, option or agreement which conflicts with the provisions hereof or which purports to grant anyone else conflicting rights or any rights which would interfere with the full and complete performance by Fighter of his obligations hereunder or the free and unimpaired exercise by the Promoter of any of the rights granted to it hereunder.

Fighter further agrees to indemnify, defend and hold harmless Promoter and its officers, employees, representatives and agents from and against any suits, claims, actions, proceedings, expenses (including reasonable attorneys' fees) and damages arising from any actual or claimed breach of any of Fighter's representations, warranties and covenants herein.

13.    Promoter's Representations and Warranties.

Promoter represents, warrants and agrees that Promoter is free to enter into this Agreement, and is not a party to, and will not during the Term enter into any contract or agreement which would interfere with Promoter's ability to fulfill its obligations pursuant to the terms and conditions of this agreement.

10

14.    Confidentiality.  Fighter and Fighter's representatives and affiliates shall maintain strict confidentiality regarding Promoter and all of the Promoter's contracts, agreements, business arrangements, plans, legal and business affairs, and professional relationships.  Without limiting the generality of the foregoing, Fighter shall maintain strict confidentiality regarding the terms of this Agreement, and Fighter agrees that neither Fighter nor Fighter's representatives and affiliates shall use, disseminate, publish or disclose, or authorize or permit any third party to use, disseminate, publish or disclose, any information regarding the terms of this Agreement or any other agreement between Fighter and Promoter.  The obligations set forth in this paragraph are of the essence of this Agreement, and any breach or violation hereof shall constitute a material breach of this Agreement.

15.    Injunctive Relief.

Fighter acknowledges and agrees that the services to be rendered or furnished by him and the rights granted to Promoter hereunder are of a special, unique, unusual and extraordinary character, giving them peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law and could cause Promoter irreparable damage and injury. Fighter, therefore, agrees that, upon the finding of a court of competent jurisdiction that such relief is appropriate, Promoter shall be entitled to injunctive and other equitable relief to prevent any breach or default hereunder without any requirement to post a bond, which shall be in addition to and without prejudice to any other rights or remedies Promoter may have in such event.

16.    Right to Assign.

11

Promoter shall have the right to assign, license or transfer any or all of the rights granted to it hereunder to any person, firm or corporation, so long as Promoter shall remain liable for its financial obligations to Fighter hereunder. However, the obligations of Fighter hereunder are personal to him, and neither the benefits nor the duties of Fighter hereunder may be assigned, pledged or transferred for any reason.

17.    Publicity and Promotion.

Fighter agrees that he will cooperate and assist in the publicizing, advertising and promoting of each Bout, and that he will appear at and participate in a reasonable number of joint or separate press conferences, interviews (before and after a Bout) and other publicity or exploitation appearances, or activities (any or all of which may be telecast, broadcast, recorded or filmed), at times and places designated by Promoter (which such expenses including, but not limited to, travel and accommodations will be paid by Promoter).  If requested by Promoter, Fighter agrees to accompany Promoter on a press tour in which Fighter shall visit various cities to publicize a Bout and will grant reasonable interviews with the press and media on said tour. Fighter further agrees to cooperate with any sponsors of a Bout and to post reasonable advertising materials at the training camp of Fighter used in connection with publicity or advertising of such sponsors and to participate in reasonable advertising requests of such sponsors. Fighter agrees, at the request of Promoter, that the training and sparring sessions of Fighter at the site of a Bout shall be open to the public.

18.    Promoter's Promotion of Other Fighters

Nothing herein shall prevent Promoter from engaging in promotion activities for any other fighter, including other fighters in the same weight class as Fighter; and Promoter shall

12

have no duty or obligation to direct or arrange any particular Bout for Fighter as opposed to any other Fighter.

19.    Survival of Provisions

If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons whose circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

20.    Successors

The terms, conditions and covenants of this Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto, their heirs, personal representatives, successors or assigns.

21.    Construction

The captions and headings appearing in this Agreement are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such paragraphs of this Agreement or in any way affect this Agreement. The use of the singular herein shall be deemed to include the plural and conversely the plural shall be deemed to include the singular.

22.    Notices

If at any time following the execution of this Agreement it shall become necessary or convenient for one of the parties hereto to serve any notice, demand or communication upon the other party, such notice, demand or communication shall be in writing signed by the party

13

serving the same, deposited in the registered or certified United States mail, return receipt requested, postage prepaid, or sent by a recognized courier service, and (a) if intended for Promoter shall be addressed to:

> Top Rank Inc. (attn. Daniel Pancheri)
>
> 748 Pilot Road
>
> Las Vegas, Nevada 89119
>
> and:

and (b) if intended for Fighter shall be addressed to:



or to such other address as either party may have furnished to the other in writing as a place for the service of notice. Any notice so mailed shall be deemed to have been given as of the time the same is deposited in the United States mail or delivered to a recognized courier service.

23.    Entire Agreement

This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained herein and supersedes all prior agreements, representations and understandings of the parties with respect to the subject matter of this Agreement. No amendment of, addition to or modification of this Agreement shall be effective unless the same is in writing and signed by all parties. Any term or provision of this Agreement may be waived in a

14

signed writing at any time by the party which is entitled to the benefit thereof; provided, however, that any waiver shall apply only to the specific event or omission waived and shall not constitute a continuing waiver. Any term or provision of this Agreement may be amended or supplanted at any time by a written instrument executed by all the parties hereto. No such agreement shall be binding unless executed in writing by all parties.

24.    Non-Waiver

The failure of the Promoter to insist upon the strict and prompt performance of the covenants and agreements hereunder and the acceptance of such performance hereafter shall not constitute or be construed as a waiver or relinquishment of the Promoter's rights thereafter to enforce the same strictly according to the tenor thereof, even in the event of a continuous or subsequent default by either party.

25.    Governing Law, Jurisdiction, Venue.

This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada governing agreements made and to be performed wholly within the State of Nevada. The parties hereby (a) expressly consent to the exclusive jurisdiction and venue of the state and federal courts located in Clark County, Nevada for any action brought by either party to interpret or enforce any provision of this Agreement and (b) agree not to assert (by way of motion, as a defense or otherwise) that such legal proceeding has been brought in an inconvenient forum. The undersigned, by execution and delivery of this Agreement, expressly and irrevocably consent to the service of any complaint, summons, notice or other process relating to any such action or proceeding by delivery thereof to such party by hand or by certified mail, delivered or addressed to the address set forth in this Agreement.

15

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

FIGHTER                                    CO-MANAGER

By: _Terence Crawford_ 9-30-14      _[signature]_ 9-30-14

TOP RANK, INC.

_____

CO MANAGER
_Brian McIntyre_ 9/30/2014

Top Rank donate the amount of $20,000 to B&B boxing Academy, Inc. an IRS recognized 501(c)(3) corporation.

* For all bouts occuring in ~~Omaha~~ state of Nebraska NE, Crawford will receive fourteen (14) ringside tickets from Top Rank; twenty (20) second price; and twenty (20) third price. ~~Like~~ ~~Additionally~~, ~~two~~ co-manager Brian McIntyre will receive ten (10) ringside tickets ~~&~~ to bouts occuring in Omaha. FOR such other bouts occuring outside of the state of Nebraska, Terence Crawford shall be provided by Top Rank ten (10) ringside, ten (10) second price, and ten (10) third price. Co-Manager Brian McIntyre shall receive four (4) ringside, four (4) second price, four (4) third price.