IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MIDDENDORF SPORTS, a Maryland Sole Proprietorship, | ) ) ) | CASE NO. 8:17-cv-00011 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **PLAINTIFF'S BRIEF REGARDING THE ISSUES OF TITLE DEFENSE** |
| TOP RANK, INC., a Nevada corporation, and TERENCE CRAWFORD, an individual, | ) ) ) ) | **AND GATE PARTICIPATION** |
| Defendants. | ) ) | |

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Middendorf Sports ("Middendorf"), pursuant to the Court's Order on Final Pretrial Conference (Doc. #141) files its Brief Regarding the Issues of Title Defense and Gate Participation. In support thereof, Plaintiff would respectfully show this Honorable Court as follows:

**I.   SUMMARY OF THE ARGUMENT**

Through two previous summary judgment orders (Doc. #123 and #140) the Court has held that, as a matter of law, "the unambiguous language of the Agreement and Release obliges Top Rank to pay Middendorf eight percent of Crawford's purse for any Crawford title defense that Top Rank promotes pursuant to a promotional rights agreement." (Doc. #123 at 15; Doc. #140 at 2). Thus, as the Court recognized in its Order on Final Pretrial Conference, only two issues remain to be determined:

1. Whether Crawford's bouts with Postol and Indongo were "Title Defenses" under the governing contracts such that Middendorf Sports was entitled to receive eight percent (8%) of Crawford's purse pursuant to the Agreement and Release; and,

2. Whether "gate participation" is part of Crawford's "purse" such that Middendorf Sports was entitled to receive eight percent (8%) of Crawford's gate participation pursuant to the Agreement and Release.

As explained in more detail below, the answer to both of these questions is Yes.

First, the plain, unambiguous language of the Agreement and Release clearly entitles Middendorf to receive an 8% fee each time Crawford defends a title recognized by the WBC, WBO, WBA or IBF. There is no dispute that Crawford was defending his WBO world championship title against Viktor Postol. (Doc. #141 at 4, ¶ 17). Likewise, there is no dispute that Crawford was defending his WBO and WBC world championship titles against Julius Indongo. (*Id.* at 4, ¶ 23). Nevertheless, Top Rank refuses to pay Middendorf the required fee for those fights simply because Crawford was also challenging for world titles recognized by other sanctioning bodies, thus making these two fights so-called "unification bouts." But simply because those fights sought to unify titles does not mean that Crawford was not engaging in a "Title Defense" as stated in the Agreement and Release. Top Rank's tortured interpretation violates basic Nevada rules of contract construction, seeks to create an exception to "Title Defense" where none exists, and asks the Court to insert language into both the Agreement and Release and the promotional rights agreements that is not there.

Second, the Exclusive Restated Promotional Rights Agreement—which the Court has already found is "a promotional rights agreement" contemplated by the Agreement and Release—explicitly includes "Gate Participation" as part of Crawford's purse for certain bouts occurring in Omaha, Nebraska. There is no dispute that Top Rank paid Crawford certain sums for gate participation as part of his purse for several fights for which Middendorf was owed its 8% fee. Accordingly, under the plain, unambiguous language of the Agreement and Release and applicable promotional rights agreements, Middendorf is entitled to receive 8% of gate participation paid to Crawford as well.

## EVIDENCE IN SUPPORT OF BRIEF

Plaintiff relies on the following evidence in support of this Brief:

Exhibit A – Agreement and Release dated June 30, 2011 between Top Rank and TKO Boxing Promotions, Inc.

Exhibit B – Promotional Rights Agreement dated June 30, 2011 between Top Rank and Crawford

Exhibit C – Exclusive Restated Promotional Rights Agreement dated September 16, 2014 between Top Rank and Crawford

Exhibit D – Deposition Testimony of Todd H. duBoef

Exhibit E – Deposition Testimony of Terrance Crawford

Exhibit F – Deposition Testimony of Cameron Dunkin

Exhibit G – Deposition of David Lopez

## ARGUMENT & AUTHORITIES

**A.   Crawford's Bouts with Postol and Indongo Were "Title Defenses" within the Meaning of the Agreement and Release and Applicable Promotional Rights Agreements, Entitling Middendorf to 8% of the Purses Therefrom.**

As previously explained, there is no dispute that Crawford was defending world championship titles when he fought Postol and Indongo. (Doc. #141 at 4, ¶¶ 17, 23). In accordance with the plain language of the Agreement and Release and applicable promotional rights agreements, that should be the end of the inquiry to determine that Middendorf was, in fact, entitled to receive his 8% fee from those bouts. It is immaterial that Crawford was also challenging for world championship titles in those fights—a so-called "unification bout." Indeed, as the Court recognized in its Order denying Top Rank's Motion in Limine:

> There is a strong argument to be made that a unification bout is simply a combination of a title defense and a title challenge, and accordingly is

> included in a "title defense" within the meaning of the Agreement and Release. It is, in fact, Top Rank that seeks to avoid what might otherwise be seen as a clear contractual obligation by invoking a technical understanding of the term "title defense".

(Doc. #124 at 5). The Court's statement comports with Nevada rules of contract construction and the plain, unambiguous language of the Agreement and Release and promotional rights agreements.

"A contract should be given a reasonable and fair interpretation." *Reno Club, Inc. v. Young Inv. Co.*, 182 P.2d 1011, 1017 (Nev. 1947). Conversely, "[a] contract should not be construed so as to lead to an absurd result." *Id.* "In the absence of clear evidence of a different intention, words must be presumed to have been used in their ordinary sense, and given the meaning usually and ordinarily attributed to them." *Id.* at 1016.

The "court should not revise a contract under the guise of construing it." *All Star Bonding v. State of Nevada*, 62 P.3d 1124, 1125 (Nev. 2003). Moreover, neither can a court "interpolate in a contract what the contract does not contain." *Id.* "***Every word*** must be given effect if it at all possible." *Royal Indem. Co. v. Special Serv. Supply Co.*, 413 P.2d 500, 502 (Nev. 1966) (emphasis added). As the Nevada Supreme Court has explained:

> The court is not at liberty, ***either to disregard words used by the parties***, descriptive of the subject matter or of any material incident, ***or to insert words which the parties have not made use of***. It cannot reject what the parties inserted, unless is it repugnant to some other part of the agreement.

*Id.* (emphasis added). Finally, "ambiguity is not required before evidence of trade usage . . . can be used to ascertain or illuminate contract terms." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 367 (Nev. 2013) (internal citations omitted).

Turning to the applicable contracts in this case, the Agreement and Release reads as follows: "For each Title Defense (for either the WBC, WBO, WBA, or IBF, and as defined in the Promotional Rights Agreement) of Fighter's promoted by Top Rank pursuant to the

Promotional Rights Agreement, [Middendorf] shall be paid a fee equal to eight percent (8%) of the purse payable to Fighter for such Title Defense." (Ex. A at ¶ 5). Thus, the Agreement and Release defines "Title Defense" as (1) any title defense recognized by the WBC, WBO, WBA and IBF sanctioning bodies; and (2) as further defined by any applicable promotional rights agreements between Top Rank and Crawford. As the Court is aware, there are two promotional rights agreements applicable to this case—the June 30, 2011 Promotional Rights Agreement (Ex. B) and the September 16, 2014 Exclusive Restated Promotional Rights Agreement (Ex. C).[1] The June 30, 2011 Promotional Rights Agreement defines a "Championship Title Defense Bout" as a bout that Top Rank has the exclusive right to promote if Crawford is "recognized as world champion in any weight class, either by the WBC, WBA, IBF or WBO (or an equivalent world sanctioning body)." (Ex. B at ¶ 6). The September 16, 2014 Exclusive Restated Promotional Rights Agreement contains no express definition of "title defense," but only makes passing reference to "Title Defense" bouts that may be subject to a purse bid. (Ex. C at ¶ 5(b)).

      The language from all these agreements makes clear that the only limiting factor as to whether a bout constitutes a "Title Defense" is that Crawford must be defending a world championship title recognized by one of the aforementioned world sanctioning bodies. Further, Todd H. duBoef, Top Rank's president, testified during his deposition that title defense is a "broad category" and limited in the contracts only by the requirement that the title defense be recognized by one of the "four major organizations." (Ex. D at Pg. 192, Ln. 14 – 24). Now, however, rather than pay Middendorf his 8% fee for the Postol and Indongo

---

[1] Upon information and belief, and as reported by various boxing media outlets and Top Rank's own website, Top Rank and Crawford entered into a new, multi-year promotional rights agreement on or about September 5, 2018.

bouts—again, bouts where it is undisputed that Crawford was defending titles—[2]Top Rank refuses, arguing that such bouts were "unification bouts" not subject to a fee. But Top Rank's interpretation would require the Court to read into the contracts words that are not there.

Indeed, the Agreement and Release does not carve out "unification bouts" as an exception to Title Defense. Top Rank certainly could have included such limiting or exceptional language in the Agreement and Release if it had wished to do so. Likewise, none of the promotional rights agreements even includes the term "unification bouts," and the 2011 Promotional Rights Agreement does not create any exception to what constitutes a "Championship Title Defense Bout" other than the title being recognized by the WBC, WBA, IBF or WBO.[3] Thus, as the Court has already observed, Top Rank seeks a "technical understanding of the term 'title defense'" that is not supported by the agreements at issue. (Doc. #124 at 5). Top Rank should not be allowed to "avoid . . . a clear contractual obligation" with such legally unsupported gamesmanship. (*Id.*). Therefore, based on Nevada rules of contract construction and the plain language of the agreements, the Court should hold that Middendorf is entitled to its 8% fee for the Postol and Indongo bouts because Crawford was engaged in "Title Defense[s]" within the meaning of the Agreement and Release.

---

2 In addition to these facts being stipulated, numerous witnesses testified that Crawford was defending titles in these bouts. (*See, e.g.* Ex. E at Pg. 28, Ln. 7 – 12; Pg. 31, Ln. 18 – 25; Ex. F at Pg. 112, Ln. 25 – Pg. 113, Ln. 15).

3 Although it is true that the 2011 Promotional Rights Agreement includes a category of "Other Bouts" (Ex. B at ¶ 7(a)), nowhere in this paragraph does it specifically include so-called "unification bouts" or otherwise reference what constitutes "other bouts" besides "any boxing matches, athletic contests or exhibitions during the term of this Agreement." (*Id.*).

**B. Pursuant to the Exclusive Restated Promotional Rights Agreement, Gate Participation Is Included as Part of Crawford's "Purse," Thus Middendorf Is Entitled Under the Agreement and Release to Receive 8% of those Gate Participation Revenues.**

Under the Agreement and Release, Middendorf is entitled to 8% of the "purse payable to Fighter for such Title Defense." (Ex. A at ¶ 5). The term "purse," however, is not defined in the Agreement and Release. More specifically, the Agreement and Release does not expressly state if "purse" includes amounts Crawford receives from Top Rank for "gate participation." Although the 2011 Promotional Rights Agreement makes no explicit mention of Crawford's purse including "gate participation," the Exclusive Restated Promotional Rights Agreement does. Indeed, under the heading of "Minimum Bouts and Purses," the Exclusive Restated Promotional Rights Agreement includes "Gate Participation" as "additional compensation for Fighter's participation in bouts featured as main events occurring in Omaha, Nebraska pursuant to this Agreement." (Ex. C at ¶ 3(b)). Further, Todd duBoef admitted during his deposition that "Gate Participation" revenues are included under "Purses" in the Exclusive Restated Promotional Rights Agreement. (Ex. D at Pg. 137, Ln. 13 – 20).

It is undisputed that Top Rank paid Crawford gate participation amounts for three bouts: (1) $21,931.60 for Crawford's title defense against Gamboa (Doc. # 141 at 3, ¶9); (2) $26,824.31 for Crawford's title defense against Jean (*Id.* at 3, ¶13); and (3) $29,955 for Crawford's title defense against Molina (*Id.* at 4, ¶ 19). (*See also* Ex. D at Pg. 126, Ln. 21 – 23; Pg. 173, Ln. 8 – Pg. 174, Ln. 1; Ex. E at Pg. 20, Ln. 1 – 14; Ex. G at Pg. 21, Ln. 16 – 25). The Jean and Molina bouts took place when the Exclusive Restated Promotional Rights Agreement was in effect. As such, the "gate participation" revenues Top Rank paid to Crawford for those bouts clearly were part of Crawford's "purses" for which Middendorf

is entitled to receive 8% therefrom under the Agreement and Release. With respect to the Gamboa, even though that bout occurred under the 2011 Promotional Rights Agreement, which is silent on gate participation as part of Crawford's purses, Top Rank paid him gate participation revenues anyway. "Courts properly take into consideration, in interpreting contracts, the interpretation which the parties themselves, by words or actions, have placed upon them." *Reno Club, Inc.*, 182 P.2d at 1019. In that regard, a contract may be explained by course of performance." *United Servs. Auto Assoc. v. Schlang*, 894 P.2d 967, 971 (Nev. 1995). Thus, to the extent Top Rank paid Crawford gate participation revenues as part of his purse for the Gamboa fight, Middendorf is entitled to its 8% fee from such amounts based on the Agreement and Release and Top Rank's course of performance.

## CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court hold that Crawford's bouts with Postol and Indongo were "Title Defenses" within the meaning of the Agreement and Release and applicable promotional rights agreements, and that Middendorf is entitled to receive 8% of any gate participation revenues Top Rank paid to Crawford for the Gamboa, Jean and Molina bouts. Plaintiff prays for all other and further relief to which it may be justly entitled.

Respectfully submitted,

MIDDENDORF SPORTS, Plaintiff,

WATTS GUERRA LLP
4 Dominion Drive, Building 3 - Suite 100
San Antonio, Texas 78257
Telephone: 210.447.0500
Fax: 210.447.0501

By:   /s/ - Jorge L. Mares
FRANCISCO GUERRA, IV. (*pro hac vice*)
Texas State Bar No. 00796684
Email: fguerra@wattsguerra.com
P. BRIAN BERRYMAN (*pro hac vice*)
Texas State Bar No. 02254300
Email: bberryman@wattsguerra.com
JORGE L. MARES (*pro hac vice*)
Texas State Bar No. 24087973
Email: jmares@wattsguerra.com

*And*

HOUGHTON BRADFORD WHITTED PC, LLO
6457 Frances Street, Suite 100
Omaha, Nebraska 68106
Telephone: (402) 344-4000
Fax: (402) 930-1099

D.C. "WOODY" BRADFORD III, #10402
KEITH A. HARVAT, #21008
wbradford@houghtonbradford.com
kharvat@houghtonbradford.com

*And*

LAW OFFICES OF MICHAEL MILLER, P.C.
926 Chulie Drive
San Antonio, Texas 78216
Telephone: (210) 225-6666
Facsimile: (210) 225-2300

Michael Miller (*pro hac vice*)
mmiller@michaelmillerlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that service of the foregoing was made on the 14th day of September 2018 as indicated below:

| | |
|---|---|
| Todd C. Kinney, Esq.<br>KUTAK ROCK LLP<br>1650 Farnam Street<br>Omaha, Nebraska 68102<br>402.346.6000<br>*Attorneys for Defendant Terence Crawford* | *Via Electronic Filing* |
| Donald J. Campbell, Esq.<br>J. Colby Williams, Esq.<br>Philip R. Erwin, Esq.<br>CAMPBELL & WILLIAMS<br>700 South Seventh Street<br>Las Vegas, Nevada 89101<br>702.382.5222<br>*And* | *Via Electronic Filing* |
| Joseph S. Daly, Esq<br>SODORO, DALY, SHOMAKER & SELDE, P.C.<br>7000 Spring Street<br>Omaha, Nebraska 68106<br>402.397.6200<br>*And* | *Via Electronic Filing* |
| Patrick J. Borchers, Esq.<br>2500 California Plaza<br>Omaha, Nebraska 68178<br>402.280.3009<br>*Attorneys for Defendant Top Rank, Inc.* | *Via Electronic Filing* |

/s/ - Jorge L. Mares
JORGE L. MARES